# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**RUTH ESTHER MARTINEZ,**

      **Plaintiff,**

v.                                                        Case No: 6:17-cv-1468-Orl-DCI

**SOCIAL SECURITY ADMINISTRATION,**

      **Defendant.**

# MEMORANDUM OF DECISION

Ruth Esther Martinez (Claimant) appeals the Commissioner of Social Security's final decision denying her applications for disability benefits. Doc. 1. Claimant raises several arguments challenging the Commissioner's final decision and, based on those arguments, requests that the matter be reversed and remanded for further proceedings. Doc. 20 at 11-16, 24-25, 27. The Commissioner argues that the ALJ committed no legal error and that his decision is supported by substantial evidence and should be affirmed. *Id*. at 16-24, 25-27. The Court finds that the Commissioner's final decision is due to be **AFFIRMED**.

## I.    Procedural History

This case stems from Claimant's applications for disability insurance benefits and supplemental security income, in which she alleged a disability onset date of November 22, 2013. R. 234-45. Claimant's applications were denied on initial review and on reconsideration. The matter then proceeded before an ALJ. The ALJ held a hearing, at which Claimant and her representative appeared. R. 35-64. On February 16, 2017, the ALJ entered his decision denying

Claimant's applications for disability benefits.  R. 18-26.  Claimant requested review of the ALJ's decision, but the Appeals Council denied review on June 5, 2017.  R. 1-3.  This appeal followed.

II.     **The ALJ's Decision**

The ALJ found that Claimant suffered from the following severe impairments: lumbar and cervical degenerative disc disease; obesity; GERD; depression; and an anxiety disorder.  R. 20-21.  The ALJ, however, determined that none of the foregoing impairments, individually or in combination, met or medically equaled any listed impairment.  R. 21-22.

The ALJ found that Claimant has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [The claimant can] occasionally stoop, kneel, crouch, or crawl.  She should avoid climbing ladders, ropes or scaffolds but can occasionally climb ramps and stairs.  She should avoid exposure to hazards such as heights or machinery with moving parts.  She should avoid work with production rate pace work.  Occasional changes in routine work place setting.  She is likely to be absent from work 1 day per month.

R. 22.[1]  In light of this RFC, the ALJ found that Claimant was able to perform her past relevant work as a housekeeper, as well as other work in the national economy.  R. 24-26.  Thus, the ALJ concluded that Claimant was not disabled between her alleged onset date, November 22, 2013, through the date of the ALJ's decision, February 16, 2017.  R. 26.

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

**III. Standard of Review**

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV. Analysis**

Claimant raises three assignments of error: 1) the ALJ failed to develop the record by not obtaining medical opinions from either treating or examining physicians; 2) the ALJ failed to properly evaluate Claimant's obesity; and 3) the ALJ erred by assigning great weight to Dr. Audrey Goodpasture's opinion. Doc. 20 at 11-16, 24-25. The Court will address each assignment of error in turn.

**A. Duty to Develop**

Claimant argues that the ALJ failed to carry out his duty to develop the record by not obtaining any medical opinions from her treating physicians or an examining physician. Doc. 20

at 11-16. The Commissioner argues that the ALJ was not required to obtain medical opinions from Claimant's treating physicians or from examining physicians because the record contained sufficient information for the ALJ to render an informed decision. *Id*. at 16-24.

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).[2] This obligation requires the ALJ to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)), and order a consultative examination when such an examination is necessary to make an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *see also* 20 C.F.R. §§ 404.1519a(b), 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). In determining whether it is necessary to remand a case for development of the record, the Court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Graham*, 129 F.3d at 1423 (internal quotation marks omitted).

1. **Physical Impairments**

Claimant argues that the ALJ failed to develop a full and fair record by not obtaining a treating or examining physician's opinion that addressed the limitations caused by Claimant's physical impairments. Doc. 20 at 14-16. The Court disagrees.

---

[2] The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). Here, Claimant was represented during the administrative proceedings. R. 18, 35. Therefore, the ALJ only had a basic duty to develop the record.

The record contains ample evidence concerning Claimant's physical impairments, including treatment records that contained examination findings, diagnoses, and even some functional limitations, i.e., avoiding heavy weights and bending over (R. 366). *See, e.g.*, R. 364-418, 472-569, 588-611. These records span the relevant period and are relatively consistent in their findings, i.e., mildly bulging discs (R. 404, 473), tenderness in the lumbar spine (R. 365, 368, 371, 376, 382, 398, 409, 484, 514, 527), reduced range of motion at the waist (R. 368, 371, 376, 382, 398, 409, 484, 514, 527), and an antalgic gait (R. 368, 371, 376, 382, 398, 409, 484, 527).[3] The record also contains a detailed orthopedic evaluation and an opinion from a non-examining physician, Dr. Goodpasture.[4] R. 102-04, 422-25. This evidence provides both insight into the severity of Claimant's physical impairments and the functional limitations caused by those impairments. *Id*.

The only alleged evidentiary gap Claimant points to is the absence of a treating or examining physician's opinion that addresses the limitations caused by Claimant's physical impairments. Doc. 20 at 14-16. However, there is no rigid requirement that the ALJ must obtain such an opinion before rendering his decision. *See Gregory v. Astrue*, Case No. 5:07-cv-19-Oc-GRJ, 2008 WL 4372840, at *8 (M.D. Fla. Sept. 24, 2008) ("A medical opinion is . . . not required to validate a RFC finding by the ALJ."); *see also Wind v. Barnhart*, 133 F. App'x 684, 693 (11th Cir. 2005) (noting that an ALJ is "not required to seek additional independent expert medical testimony before making a disability determination if the record is sufficient and additional expert

---

[3] There are other treatment records that contained unremarkable examination findings. R. 492, 545, 554, 559.

[4] The Court recognizes that Claimant challenges the weight assigned to Dr. Goodpasture's opinion. But, as discussed below, the Court finds that the ALJ's decision to assign great weight to Dr. Goodpasture's opinion is supported by substantial evidence. *See infra* pp. 9-11.

testimony is unnecessary").[5] Thus, the absence of such an opinion does not necessarily result in an evidentiary gap in the record if there is sufficient evidence for the ALJ to make an informed decision. Here, the evidence before the ALJ (numerous treatment notes, several imaging studies, an orthopedic evaluation, and a non-examining physician's opinion) was more than sufficient for him to make an informed decision about the functional limitations caused by Claimant's physical impairments. Indeed, the ALJ accounted for Claimant's physical impairments by limiting her to light work with additional physical limitations. R. 22. Claimant does not contest these limitations, nor does she contend that her physical impairments cause any additional limitations. *See* Doc. 20 at 12-14. Thus, on this record, the Court finds that there was no need for the ALJ to obtain an opinion from a treating or examining physician that contained functional limitations. Further, even if the Court were to find that there was an evidentiary gap, Claimant has failed to demonstrate that the lack of a treating or examining physician opinion resulted in unfairness or clear prejudice. Therefore, the Court finds that the Claimant has failed to demonstrate that the ALJ did not develop a full and fair record with respect to her physical impairments.

**2. Mental Impairments**

Claimant argues that the ALJ failed to develop a full and fair record by not obtaining a treating or examining physician's opinion that addressed the limitations caused by Claimant's mental impairments. Doc. 20 at 12-14. The Court disagrees.

The record contains ample evidence concerning Claimant's mental impairments, including a December 2014 psychiatric evaluation performed by Dr. David Medina, as well as a contemporaneous biopsychosocial assessment. R. 571-78. These evaluations showed that

---

[5] In the Eleventh Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Claimant suffered from a depressed mood, which resulted in a diagnosis of "major depressive disorder, single episode, mild" and treatment consisting of medication and therapy. R. 572, 577. The treatment records following these evaluations show that Claimant's anxiety and depression were stable. R. 546, 559. Additionally, in April 2016, Claimant stopped going to therapy. R. 586. At that time, Claimant's mental health was found to have "improved" and her prognosis was "good." *Id*.

The only alleged evidentiary gap Claimant points to is the absence of a treating or examining physician's opinion that addresses the limitations caused by Claimant's mental impairments. Doc. 20 at 12-14. As discussed above, the absence of such an opinion does not necessarily result in an evidentiary gap in the record if there is sufficient evidence for the ALJ to make an informed decision. *See Wind*, 133 F. App'x at 693. Here, the ALJ found that Claimant's depression and anxiety were severe impairments. R. 20. The ALJ then considered the medical evidence discussed above, which included psychiatric and biopsychosocial evaluations. R. 24. The evidence before the ALJ was more than sufficient for him to make an informed decision about the functional limitations caused by Claimant's mental impairments. Indeed, the ALJ accounted for Claimant's mental impairments by limiting her to work that does not require production quotas and only involves occasional changes in the workplace. R. 22. Claimant does not contest these limitations, nor does she contend that her mental impairments cause any additional limitations. *See* Doc. 20 at 12-14. Thus, on this record, the Court finds that there was no need for the ALJ to obtain an opinion from a treating or examining physician that contained functional limitations. Further, even if the Court were to find that there was an evidentiary gap, Claimant has failed to demonstrate that the lack of a treating or examining physician opinion resulted in unfairness or

clear prejudice. Therefore, the Court finds that the Claimant has failed to demonstrate that the ALJ did not develop a full and fair record with respect to her mental impairments.

**B. Obesity**

Claimant argues that the ALJ failed to evaluate her obesity in accordance with Social Security Ruling (SSR) 02-1p. Doc. 20 at 14-15. The Commissioner argues that the ALJ properly considered Claimant's obesity in reaching his RFC determination. *Id*. at 20-21.

An ALJ must consider obesity as an impairment when evaluating whether a claimant is disabled because "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems." SSR 02-1p, 2000 WL 628049, at *1, 3 (Sept. 12, 2000). Specifically, an ALJ should assess the effect that obesity has on exertional and postural functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id*. at *6.

The ALJ stated the following with respect to Claimant's obesity:

> Treatment notes also reveal obesity diagnosis, a condition that could further intensify her back pain and complicated her ability to perform orthopedic maneuvers (Exhibit 1F/36). She weighs 181 and is 62 inches tall. This is a body mass index of 33.12. In connection with the effect of obesity upon functions involving movement, Social Security Ruling 02-1p, instructs that "[o]besity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect the ability to do postural functions, such as climbing, balance, stooping, and crouching." The combined effect of the obesity and degenerative joint disease and lymphedema has limited the capabilities of the claimant. Pertinently, the Ruling goes on to explain, "The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." In this instance the undersigned has considered the claimant's obesity in conjunction with her other physical complaints. While she testified at the hearing she could walk, stand and sit for only 10 to 15 minutes at one time, the medical evidence including her MRI and excessive weight does not support such severe functional limitations.

R. 23. This discussion clearly demonstrates that the ALJ considered Claimant's obesity in accordance with SSR 02-1p. Specifically, the ALJ found that Claimant's obesity was a severe impairment and that her obesity and other physical impairments caused some functional limitations, which were accounted for in the RFC determination. R. 20, 23. Claimant has failed to demonstrate that her obesity caused any further limitations than those included in the ALJ's RFC determination. *See* Doc. 20 at 14-15. Thus, the Court finds that the ALJ properly considered and accounted for Claimant's obesity in accordance with SSR 02-1p. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (finding no error where the "record reflects that the ALJ considered [the claimant's] obesity[,] . . . the ALJ made specific reference to SSR 02-1p in his ruling[,]" and the medical evidence did not support "specific functional limitations" attributable to obesity).

### C. Dr. Goodpasture's Opinion

Claimant argues that the ALJ erred by assigning great weight to Dr. Goodpasture's opinion because he did not have an opportunity to review all of Claimant's medical records. Doc. 20 at 24-25. The Commissioner argues that while "Dr. Goodpasture did not review all of the evidence, the ALJ did, and the ALJ properly concluded that Dr. Goodpasture's opinion was supported by the medical evidence and consistent with the record as a whole." *Id*. at 26-27.

The opinion of a non-examining physician is generally entitled to little weight and, "taken alone, do[es] not constitute substantial evidence." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). An ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (finding that the ALJ did not err by relying on a consulting physician's opinion where it was

consistent with the medical evidence and findings of the examining physician); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991).

Dr. Goodpasture reviewed the record in July 2014, at which time the record contained the following evidence: a 2012 x-ray of Claimant's lumbosacral spine that showed a small anterior marginal osteophytic lipping at L4-L5 and L5-S1 (R. 405); treatment records from 2012 through 2014 that routinely noted that Claimant had lumbar paraspinal tenderness, could perform 45 degrees of flexion at the waist while standing, and had an antalgic gait (R. 365, 368, 371, 376, 382, 398, 409); a 2014 MRI of Claimant's lumbar spine that showed mild disc bulges at L2-L3 and T11-T12 (R. 404); and a 2014 orthopedic evaluation that noted that Claimant appeared to be exaggerating her physical limitations (R. 422-25). R. 103-104. In light of this evidence, Dr. Goodpasture opined that Claimant could: frequently lift/carry 10 pounds; occasionally lift/carry 20 pounds; sit for a total of 6 hours in an 8-hour workday; stand/walk for a total 6 hours in an 8-hour workday; and occasionally climb stairs and ladders, balance, stoop, kneel, crouch, and crawl. *Id*.

The ALJ found Dr. Goodpasture's opinion was consistent with the medical record and, thus, assigned it great weight. R. 24.

Claimant suggests that the medical records postdating Dr. Goodpasture's opinion – including records concerning her mental health treatment and ongoing back pain treatment – show that her overall condition worsened after Dr. Goodpasture rendered his opinion. Doc. 20 at 25. Thus, Claimant argues that Dr. Goodpasture's opinion was not entitled to great weight. *Id*. The Court disagrees for two reasons. First, there is nothing in the record that suggests that Dr. Goodpasture was asked or qualified to opine on the impact of Claimant's mental impairments. Thus, the presence of treatment records pertaining to Claimant's mental impairments does not

undermine Dr. Goodpasture's opinion, which focused on Claimant's physical impairments. Second, the treatment records dated after Dr. Goodpasture's opinion contained findings that were largely consistent with the findings contained in the treatment records that Dr. Goodpasture reviewed. Specifically, the treatment records predating and postdating Dr. Goodpasture's opinion contained observations that Claimant has mildly bulging discs (R. 404, 473), tenderness in the lumbar spine (R. 365, 368, 371, 376, 382, 398, 409, 484, 514, 527), reduced range of motion at the waist (R. 368, 371, 376, 382, 398, 409, 484, 514, 527), and an antalgic gait (R. 368, 371, 376, 382, 398, 409, 484, 527). Further, while Claimant did receive one round of facet injections after Dr. Goodpasture's opinion (R. 506-08), her treatment, which primarily consisted of pain medication, was otherwise largely consistent throughout the relevant period (*See, e.g.*, R. 365, 368, 371, 376, 382-83, 398, 409, 485, 492, 515, 528). Thus, considering the consistency in objective medical findings and treatment throughout the relevant period, the Court finds that the ALJ's decision to assign Dr. Goodpasture's opinion great weight is supported by substantial evidence.

**V.     Conclusion**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 31, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties